## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| TRUSTED INTEGRATION, INC. | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 09-898 (ESH) |
|  | ) |
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Defendant. | ) |

_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff Trusted Integration, Inc., has sued the United States for violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125, unfair competition, and breach of a fiduciary duty. Defendant now moves to dismiss for lack of subject matter jurisdiction, arguing that plaintiff's claims sound in contract, the claims are barred by the Federal Tort Claims Act ("FTCA"), and plaintiff has failed to properly invoke the Lanham Act's sovereign immunity waiver. In the alternative, defendant argues that the Lanham Act claim should be dismissed for failure to state a claim upon which relief can be granted.

## BACKGROUND

In 2002, Congress passed the Federal Information Security Management Act ("FISMA"), 44 U.S.C. §§ 3541-3549, as Title III of the E-Government Act. Pub. L. No. 107-347, 116 Stat. 2899. Under FISMA, the National Institute of Standards and Technology must set standards and best practices for information security at federal agencies, and agencies must meet security standards and conduct annual, independent evaluations of their information security. 44 U.S.C. §§ 3543-3545.

Plaintiff is the maker of "TrustedAgent," a software product that allows agencies to automate compliance with FISMA. (*Id.* ¶¶ 11-12.) The Department of Justice ("DOJ") began using TrustedAgent in December 2003 and purchased a license to use the product "approximately seven months" later. (*Id.* ¶ 17.) The DOJ complied with other FISMA requirements by using a proprietary program that certified and accredited users of its information systems. (*Id.* ¶¶ 10, 18.) Together, Trusted Agent and the DOJ program made up the DOJ's "FISMA solution" and were called "Cyber Security Assessment Management" ("CSAM"). (*Id.* ¶ 18.)

In the summer of 2006, the Office of Management and Budget ("OMB") informed the federal agencies that it was planning to evaluate how they complied with FISMA. (*Id.* ¶ 20.) Based on the agencies' "capabilities, industry experiences, value, and supporting infrastructure," and a demonstration that "the products and services being offered [were] being successfully used," OMB would designate several as Centers of Excellence. (*Id.* ¶¶ 20-21, 28.) Agencies that were not designated as Centers of Excellence would be required to purchase a FISMA solution from one of the Centers. (*Id.* ¶ 21.) The OMB invited agencies to submit their solutions for consideration. (*Id.* ¶ 20.)

Plaintiff and the DOJ agreed to submit CSAM. (Compl. ¶ 23.) Plaintiff agreed that Trusted Integration would only participate in the DOJ's proposal. (*Id.* ¶ 24.) In its proposal, the DOJ included a "Statement of Capabilities," which stated that plaintiff's staff would provide technical services and that TrustedAgent was a part of CSAM. (*Id.* ¶¶ 31-38.) The agency also performed demonstrations of TrustedAgent as part of its proposal. (*Id.* ¶ 39.) In February 2007, OMB selected the DOJ and the Environmental Protection Agency as the two Centers of Excellence. (*Id.* ¶ 41.) On March 13, 2007, the DOJ performed a demonstration for "potential

customers of the Centers of Excellence" during a "customer information day."  (*Id.* ¶ 49.)  The demonstration suggested that TrustedAgent was a "key component" of its FISMA solution.  (*Id.*)

By late 2006, however, the DOJ had already begun to develop an alternative to TrustedAgent in order to "increase the revenue" it would receive if selected as a Center.  (*Id.* ¶¶ 26-27.)  The DOJ could not submit this new program in its proposal to OMB because it had not yet been "successfully used."  (*Id.* ¶ 29)  However, in March 2007, it announced that it had completed development on the replacement for TrustedAgent.  (*Id.* ¶ 45.)  It then began including the new program as part of the FISMA solution it sold to other agencies.  (*Id.* ¶¶ 46.)  It also made "disparaging comments" about TrustedAgent to various potential customers.  (*Id.* ¶ 52.)  In April 2007, the agency informed plaintiff that it would no longer offer TrustedAgent as part of its FISMA solution.  (*Id.* ¶ 53.)

In June 2008, plaintiff filed a complaint with the DOJ Procurement Services Staff under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601-613.  (Def.'s Mot., Ex. 1 ("CDA Claim") at 1.)  The DOJ's Contracting Officer rejected this claim in November 2008.  (Def.'s Mot., Ex. 2 (Decision Re: Claim of Trusted Integration, Inc.) at 1.)  Plaintiff filed this action in May 2009.

In Count I, plaintiff claims that the DOJ violated the Lanham Act by falsely claiming that its FISMA solution would include TrustedAgent.  (*Id.* ¶¶ 56-57.)  In Count II, plaintiff claims that the DOJ "disparaged" its product, "interfered with" its access to customers, and misled customers into thinking that TrustedAgent would be a part of the FISMA solution and that the replacement program "had a higher level of quality than it actually did."  (*Id.* ¶¶ 66.)  In Count III, plaintiff alleges that the DOJ owed it a fiduciary duty "based upon their relationship" and violated that duty by failing to inform it that it was developing an alternative to TrustedAgent, by

replacing TrustedAgent, by failing to offer TrustedAgent as part of its solution, by disparaging

TrustedAgent, and by preventing plaintiff from seeking other potential customers.  (*Id.* ¶ 70.)

Plaintiff seeks $15 million in damages.  Defendant now moves for dismissal as to all claims

under Fed. R. Civ. P. 12(b)(1), or, in the alternative, for dismissal under Fed. R. Civ. P. 12(b)(6)

as to the Lanham Act in Count I.

**ANALYSIS**

## I.  STANDARD OF REVIEW

### A.  Lack of Subject Matter Jurisdiction

On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff bears the burden of

establishing by a preponderance of the evidence that the court has subject matter jurisdiction.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The Court must accept all factual

allegations in the complaint as true and give plaintiff the benefit of all reasonable inferences

from the facts alleged.  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000).

A court may dismiss for lack of subject matter jurisdiction only if "it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999) (quoting *Caribbean Broad.*

*Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998)).

### B.  Failure to State a Claim

"In determining whether a complaint fails to state a claim, [courts] may consider only the

facts alleged in the complaint, any documents either attached to or incorporated in the complaint

and matters of which [courts] may take judicial notice."  *E.E.O.C. v. St. Francis Xavier*

*Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  This includes "public records," and

documents "appended to [a] motion to dismiss and whose authenticity is not disputed" if they are

"referred to in the complaint and are integral" to plaintiff's claim.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

When ruling on a Rule 12(b)(6) motion to dismiss, courts may employ a "two-pronged approach."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Courts must first assume the veracity of all "well-pleaded factual allegations" in the complaint.  *Id.*  Courts need not, however, accept as true "'naked assertion[s]' devoid of 'further factual enhancement,'" *id.* at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), or "legal conclusions cast in the form of factual allegations."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A pleading must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' . . . ."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Once the court has determined that there are well-pleaded factual allegations, it must determine whether the allegations "plausibly give rise to an entitlement to relief" by presenting "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570).  Merely pleading facts "consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 1949.

### C.  Tort Actions Against the Government

The United States is "immune from suit save as it consents to be sued[.]"  *Hercules Inc. v. United States*, 516 U.S. 417, 422-23 (1996) (internal quotations omitted).  However, the FTCA makes the United States liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  Plaintiff may recover "under

circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).

Though the FTCA "generally authorizes a broad waiver of the government's sovereign immunity for claims sounding in tort," *Loughlin v. United States*, 286 F. Supp. 2d 1, 8 (D.D.C. 2003), it does not waive immunity for "[a]ny claim arising out of . . . libel, slander, misrepresentation, deceit, or interference with contract rights[.]"  28 U.S.C. § 2680(h).  Thus, claims arising out of libel, slander, "fraud" and "misrepresentation" must be dismissed for lack of jurisdiction.  *See Stoyanov v. Winter*, 643 F. Supp. 2d 4, 9-10 (D.D.C. 2009).  The court's must "identify 'those circumstances which are within the words and reason of the exception' – no less and no more."  *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984) (quoting *Dalehite v. United States*, 346 U.S. 15, 31 (1953)).

District courts also lack jurisdiction over actions "founded" on an "express or implied contract with the United States" where the value of the contract exceeds $10,000.  *See* 28 U.S.C. § 1346(a)(2).  These claims fall within the scope of the CDA, 41 U.S.C. §§ 601-613, and the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, and fall exclusively within the jurisdiction of the Court of Federal Claims.  *Navab-Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 67 (D.D.C. 2009) ("When the CDA applies to a claim, its procedures provide the exclusive remedy for that dispute, and this Court lacks jurisdiction to hear it.").

## II.  COUNT I: THE LANHAM ACT

Count I alleges that the DOJ violated the Lanham Act, 15 U.S.C. § 1125, by making "a false designation of origin, false or misleading description of fact, and/or a false or misleading representation of fact[,]" acting in a way "likely to cause confusion, mistake or deceive" as to the relationship between the DOJ and plaintiff and the "origin, sponsorship, or approval" of the

DOJ's product, and by "misrepresent[ing] the nature, characteristics, or quality" of its FISMA

solution.  (Compl. ¶¶ 56-57.)  Plaintiff alleges that it suffered a "competitive and commercial

injury" as a result and has incurred "substantial losses and damages."  (*Id.* ¶¶ 59-60.)

## A.  Lack of Subject Matter Jurisdiction

### 1.  Count I

Defendant first argues that plaintiff cannot bring a claim for a violation of the Lanham

Act under Count I because it is essentially a contract claim.  Defendant asserts that the DOJ's

"statements, actions, and any duty are all grounded in and inextricably intertwined with the

performance of the license agreement or an alleged but unwritten agreement or other

'relationship' giving rise to some fiduciary duty."[1]  (*Id.* at 10-11.)  To determine whether

plaintiff's claims are essentially contract actions, the Court considers "the source of the rights

upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)."

*Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).  The mere presence of a contract

or issues relating to the contract does not "trigger[] some mystical metamorphosis" that

transforms a case into a contract action.  *See id.*  In considering the "basis" for plaintiff's claims,

the Court must consider if "it is possible to conceive of this dispute as entirely contained within

the terms of the contract.  *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77-78 (D.C. Cir.

1985).

---

[1] Defendant suggests that plaintiff has not addressed its argument that the license agreement the
DOJ allegedly purchased is the "exclusive basis" of the relationship between plaintiff and
defendant.  (Def.'s Mot. at 7; Def.'s Reply at 5.)  But plaintiff makes no allegations about the
license, other than that it existed.  (Compl. ¶ 17.)  Though plaintiff's complaint before the DOJ
Procurement Services Staff alleged breach of its licensing agreement (CDA Claim at 5-6),
plaintiff makes no such claim here.  Moreover, plaintiff's opposition brief argues that the source
of its rights are "not contractual" and that it entered into a joint venture with defendant "separate
from a contract."  (Pl.'s Opp'n at 5-6 & n.1.)  Therefore, the licensing agreement does not serve
as the basis for plaintiff's claims**.**

Although the DOJ and plaintiff allegedly had a business relationship, the "rights upon which the plaintiff bases its claims" in Count I, *Megapulse, Inc.*, 672 F.2d at 968, are not based in contract. The contractual relationship between DOJ and plaintiff is irrelevant to Count I, which is rooted in the Lanham Act, not the law of contract. The Court will not need to interpret any contract provisions to determine whether defendant violated the Lanham Act through false or misleading descriptions of fact. Thus, "[p]laintiff's position 'is ultimately based not on breach of contract, but on an alleged governmental infringement' of [a statute] 'which preexisted any contracts.'" *Navab-Safavi*, 650 F. Supp. 2d at 68 (quoting *Megapulse, Inc.*, 672 F.2d at 969 & n.47). Moreover, plaintiff does not seek specific performance or damages that can be "ascertained by reference to [its] contract." *Id.* Rather, it seeks damages for the "competitive and commercial injury" it has suffered as a result of DOJ's alleged violation of the Lanham Act. (Compl. ¶ 59.) Both the rights implied and the type of relief plaintiff requests suggest that Count I is essentially a Lanham Act claim. *Cf. Commercial Drapery Contractors v. United States*, 133 F.3d 1, 4 (D.C. Cir. 1998) (claim was not "'at its essence' a contract action" where the contract issue was merely "embedded" in the broader claim and was not an "independent cause of action"). Thus, the Tucker Act does not preclude the Court from exercising jurisdiction over Count I.

### 2. Invoking the Lanham Act's Waiver of Sovereign Immunity

Plaintiff brings Count I under the Lanham Act. (Pl.'s Opp'n at 12.) The Act contains its own waiver of sovereign immunity, added as part of the Trade Amendments Act of 1999, Pub. L. 106-43, 113 Stat. 218, which states that the United States "shall not be immune from suit in

Federal or State court by any person . . . for any violation under this chapter."[2]  15 U.S.C. §

1122.  Remedies for claims against the United States are available "to the same extent as such

remedies are available for such a violation in a suit against any person . . . ."[3]  15 U.S.C. §

1122(c).  The Act grants district courts "original jurisdiction . . . of all actions arising under this

chapter, without regard to the amount in controversy . . . ."  15 U.S.C. § 1121(a).

Defendant objects that plaintiff has not made "reference" to the waiver of sovereign

immunity or grant of jurisdiction anywhere in its complaint (Def.'s Mot. at 26) and, therefore, it

fails to set forth, as required by Fed. R. Civ. P. 8(a)(1), "a short and plain statement of the

grounds upon which the court's jurisdiction depends . . . ."  (Def.'s Reply at 16.)  This argument

fails because plaintiff has explicitly cited the Lanham Act, 15 U.S.C. § 1125, which waives

sovereign immunity.  (Compl. at 10.)  Moreover, this argument ignores the "liberal notice-

pleading standard" of Rule 8(a)(1).  *See Owens v. Republic of Sudan*, 412 F. Supp. 2d 99, 109

(D.D.C. 2006).  Plaintiff has identified and cited to the Lanham Act as the grounds for Count I.

Moreover, plaintiff has alleged facts consistent with a claim under the Act.  Failing to cite the

specific section of the statute waiving sovereign immunity is not fatal to a claim against the

government.  "[C]onstruing [its] complaint liberally," plaintiff has successfully invoked the

---

[2] The Supreme Court held that a section of the Lanham Act abrogating state sovereign immunity
violated the Eleventh Amendment.  *See Coll. Savs. Bank v. Fla. Prepaid Postsecondary Educ.
Expense Bd.*, 527 U.S. 666, 691 (1999).  This decision, which the Court issued before Congress
passed the Trade Amendments Act, "[did] not [a]ffect the provision . . . that waives Federal
government immunity from suit."  *See* 145 Cong. Rec. 15,496 (1999).

[3] Defendant half-heartedly argues that the definition of a "person" who may be held liable under
§ 1125 does not include the United States and that, because waivers of sovereign immunity must
be "unequivocally expressed," *United States v. Nordic Village*, 503 U.S. 30, 33-34 (1992), the
Lanham Act's waiver does not extend to § 1125.  (Def.'s Mot. at 27.)  However, the waiver
clearly applies to suits brought for "*any* violation of this *chapter*," which unequivocally shows
that Congress intended to waive sovereign immunity for violations of § 1125.  15 U.S.C. § 1122
(emphasis added).

Lanham Act's waiver of sovereign immunity.  *See Peavey v. Holder*, No. 05-CV-819, 2009 WL

3080464, at *10 (D.D.C. Sept. 28, 2009).

### B.  Failure to State a Claim Under the Lanham Act

Plaintiff claims that defendant has violated 15 U.S.C. § 1125, a section of the Lanham

Act that allows a plaintiff to sue where "[a]ny person, on or in connection with any goods or

services . . . uses in commerce any word, term, name, symbol, or device, or any combination

thereof, . . . false or misleading description of fact, or false or misleading representation of fact,"

if that use in commerce (A) is "likely to cause confusion, or to cause mistake, or to deceive as to

the affiliation, connection, or association of such person with another person, or as to the origin,

sponsorship, or approval of his or her goods, services, or commercial activities by another

person" or (B) "in commercial advertising or promotion, misrepresents the nature,

characteristics, qualities, or geographic origin of his or her or another person's goods, services, or

commercial activities."  15 U.S.C. § 1125(a)(1).  Any claim brought under § 1125(a)(1) must

allege that "defendant's ads were false or misleading, actually or likely deceptive, material in

their effects on buying decisions, connected with interstate commerce, and actually or likely

injurious to the plaintiff."  *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 963-64

(D.C. Cir. 1990).

Defendant argues that plaintiff has not alleged that there is a "likelihood of confusion" or

deception because DOJ never referred to its own product as "TrustedAgent" and therefore never

made a "false designation of origin."[4]  (Def.'s Mot. at 29-30.)  But consumers may be confused

---

[4] Defendant argues that companies may advertise one product to the public and subsequently sell
another without violating the Lanham Act.  (Def.'s Reply at 18 (citing *Norton Tire Co. Inc. v.
Tire Kingdom Co., Inc.*, 858 F.2d 1533, 1535 (11th Cir. 1988) ("dissuad[ing] customers from
purchasing the advertised name brand tires and instead encourag[ing] them to purchase private
brand tires" was a "sharp practice" but did not violate Lanham Act)).)  Defendant suggests that

and false designation of origin may occur even when the advertiser does not wrongly claim

authorship of another's work. *Goldsmith v. Main Line Book Co.*, 14 U.S.P.Q.2d 1459, 1461

(S.D.N.Y. 1989). As a matter of law, defendant may violate § 1125(a) by "attributing

[plaintiff's] name to the work of another." *Id.* Here, plaintiff alleges that consumers were

deceived into thinking that CSAM incorporated TrustedAgent because the DOJ attributed

plaintiff's name to its own product. (Compl. ¶ 50.) Plaintiff does not allege that defendant

attempted to "pass off" its goods by misrepresenting CSAM as Trusted Agent.[5] Rather, it alleges

that defendant falsely suggested that TrustedAgent would be a "key component" of the DOJ's

FISMA solution. (Pl.'s Opp'n at 14.) By alleging that the DOJ misled consumers as to its

"affiliation, connection, or association" with TrustedAgent, plaintiff has stated a claim under the

Lanham Act.

        Defendant also argues the DOJ's false advertising or false "designation of origin" did not

occur "in commerce." (Def.'s Mot. at 28-30; Def.'s Reply at 17.) First, it suggests that because

the DOJ is a federal agency and not a "commercial undertaking seeking either to generate a

profit or to engage in commerce," its use of the trademark could not have occurred in commerce.

(Def.'s Mot. at 28.) Defendant also suggests that transactions between federal agencies cannot

be "in commerce," and, therefore, DOJ's offer to sell its FISMA solution to various agencies was

---

the DOJ merely advertised TrustedAgent, then decided to stop including it in its FISMA
solution. (Def.'s Mot. at 30; Def.'s Reply at 18.) However, plaintiff alleges that defendant
advertised that TrustedAgent was a part of CSAM, while *at the same time* refusing to sell it to
the agencies and replacing it with its own proprietary software. (Compl. ¶¶ 45-50.) In *Norton
Tire* terms, plaintiff alleges that defendant advertised a certain name-brand tire despite refusing
to carry it in stock and refusing to sell any brand except for its own model. Thus, even if *Norton
Tire* were the law of this Circuit, it would not apply here.

[5] "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents
his own goods or services as someone else's." *Dastar Corp. v. Twentieth Century Fox Film
Corp.*, 539 U.S. 23, 28 n.1 (2003).

not a "commercial activity." (Def.'s Mot. at 29; Def.'s Reply at 17.) Although the phrase "use in commerce" has a specific meaning under the Lanham Act,[6] defendant's citation of *ALPO* suggests that it only uses the phrase as shorthand for "connected with interstate commerce." Thus, it argues that the DOJ's advertisements were not "connected with interstate commerce," *ALPO Petfoods, Inc.*, 913 F.2d at 963-64, because the DOJ is not a for-profit enterprise and because buying and selling only occurred among federal agencies.

Defendant's attempt to exempt the DOJ from the Lanham Act because it does not seek a profit is misguided. This Circuit has not limited § 1125(a)'s reach to commercial entities. *See Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1042-47 (D.C. Cir. 1989) (applying § 1125(a) in claim against non-profit organization alleging "passing off" under the Lanham Act). It requires only that advertisements be "connected with interstate commerce." *ALPO Petfoods, Inc.*, 913 F.2d at 964. This accords with the "sweeping reach" of the definition of commerce in the Lanham Act into "all commerce which may lawfully be regulated by Congress." *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 287 (1952) (quoting 15 U.S.C. §

---

[6] Although the issue is not raised by the parties in this case, the extent to which "use in commerce" is an element in cases of trademark infringement is the subject of some dispute. Section 1127 defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark," then defines "use in commerce" in the context of both "goods" and "services." *Id.* The Second Circuit recently concluded that Congress intended "use in commerce" to apply only to those seeking to register a trademark. *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 134 (2d Cir. 2009). The court found that the word "commerce" in § 1125(a) was used only to make clear that the Lanham Act did not go beyond the scope of Congress's power under the Commerce Clause. *See id.* The court also found that it would be nonsensical for the "bona fide use" requirement to apply to allegations of trademark infringement. *Id.* at 140. The court acknowledged, however, that Congress "does not enact intentions. It enacts statutes." *Id.* at 139. It also conceded that an earlier Second Circuit case had applied the "use in commerce" requirement to a case of trademark infringement. *Id.* at 140. Although it invited Congress to "study and clear up this ambiguity," the court ultimately found that both Second Circuit precedent and the language of the statute required a plaintiff alleging trademark infringement to establish that the defendant used their trademark "in commerce," as defined by the separate paragraphs for "goods" and "services." *Id.* at 140-41.

1127).  *See also Application of Silenus Wines, Inc.*, 557 F.2d 806, 811-12 (C.C.P.A. 1977)

("Courts have uniformly held, in the infringement context, that 'commerce' includes intrastate

transactions that affect interstate or foreign commerce.").  Organizations need not be commercial

undertakings to be liable under the Lanham Act.

Moreover, defendant provides no support for its contention that certain kinds of buying

and selling are not commerce within the meaning of the Lanham Act.  The "in commerce"

requirement tends to be relevant where no "sale or transport" of a trademarked good has

occurred, and "advertising alone" is at issue.  *See, e.g., Buti v. Perosa, S.R.L.*, 139 F.3d 98, 105

(2d Cir. 1998) ("mere advertising or promotion . . . is insufficient to constitute 'use' of the mark

'in commerce,'" if "unaccompanied by any actual rendering in the United States or in

'commerce which may lawfully be regulated by Congress,' . . . of the services 'in connection

with which the mark is employed'" (emphasis omitted) (quoting United Drug Co. v. Theodore

Rectanus Co., 248 U.S. 90, 97 (1918)); *Guantanamera Cigar Co. v  Corporacion Habanos, S.A.*,

No. 08-CV-721, 2009 WL 4715906, at *3-*4 (D.D.C. Dec. 10, 2009) ("[M]any courts have held

that advertising alone is not enough to constitute trademark infringement without the addition of

sales or transport of the trademark in commerce.").  Plaintiff alleges more than "mere advertising

or promotion"; it alleges that the DOJ actively sold CSAM to various agencies and attempted to

spark interest in the product at a "customer information day" with a PowerPoint presentation that

suggested TrustedAgent was included.  (*See* Compl. ¶¶ 21, 49-50.)  Defendant provides no

support for extending the exception for "mere advertising" to the wrongful use of a trademark in

advertisements for a product that is being bought by a plaintiff's potential customers in the

United States.  Therefore, the Court will not undermine the Lanham Act's waiver of sovereign

immunity by categorically exempting government agencies.

Plaintiff may sue under the Lanham Act if it "believes that [it] is or is likely to be damaged" by a person who "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1). Plaintiff alleges that other agencies sought to purchase their FISMA solution from the DOJ and that DOJ's advertisements to its potential customers portrayed TrustedAgent as "a key component," even though it had no intention of actually including it in the final product and had formally announced that it was selling its own alternative. (Compl. ¶¶ 21, 44-45, 48-49.) It further alleges that the DOJ "repeatedly referenced" TrustedAgent in its demonstration to potential customers, and that this gave customers the "false sense" that TrustedAgent would be included in the final product. (*Id.* ¶¶ 56, 59.) Finally, plaintiff alleges it has suffered an injury to its interstate business because defendant falsely and deceptively advertised a product it was selling to plaintiff's potential customers. (*Id.* ¶¶ 1, 48-50.) Given these allegations, plaintiff has stated a claim under the Lanham Act.

## III.  COUNT II: UNFAIR COMPETITION

Count II alleges that the DOJ "relied upon" and "referenced" TrustedAgent in its proposal to the OMB and its presentations to customers, "disparaged the TrustedAgent product," "interfered with" plaintiff's access to customers, and misled customers into thinking that TrustedAgent would be a part of the DOJ's FISMA solution. (Compl. ¶¶ 62-66.) Plaintiff alleges that "substantial losses and damages" resulted. (*Id.* ¶ 67.) Defendant argues that the Court lacks jurisdiction because Count II essentially sounds in contract, or, in the alternative, the Court has no jurisdiction under the FTCA because the claim arises out of "libel, slander,

misrepresentation, deceit, or interference with contract rights." (Def.'s Mot. at 12 (quoting 28 U.S.C. § 2680(h)).)

### A.  Contract Claim

To determine whether plaintiff's claims are essentially contract actions, the Court considers "the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse, Inc.*, 672 F.2d at 968.  Count II is based on the common-law tort of unfair competition, which "is not defined in terms of specific elements, but by the description of various acts that would constitute the tort if they resulted in damage." *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001).  Defendant again suggests that any duty that the DOJ had was "grounded in and inextricably intertwined with the performance of the license agreement or an alleged but unwritten agreement." (Def.'s Mot. at 10-11.)  But as with Count I, the alleged violations do not depend on any contract between plaintiff and the DOJ.  Rather, it is the acts themselves that are significant and that would give rise to liability, even without a contract.  Defendant allegedly "disparaged the TrustedAgent product, interfered with [plaintiff's] access to customers" and misled consumers.  (Compl. ¶ 66.) The provisions in any written or unwritten agreement between plaintiff and defendant are irrelevant, because the duty that plaintiff alleges exists independent of a contract.  Moreover, plaintiff seeks damages resulting from the injury to its business as a result of the DOJ's alleged unfair practices, not damages for a breach of any contract provision.  (*Id.* ¶ 67.)  Under the test in *Megapulse, Inc.*, this is essentially a tort claim.

### B.  FTCA

The FTCA waiver of sovereign immunity does not extend to claims of "libel, slander, misrepresentation, deceit, or interference with contract rights[.]" (Def.'s Mot. at 12 (quoting 28

U.S.C. § 2680(h)).)  This exception applies where government misstatements or misinformation are "essential" to plaintiff's claim.  *See Block*, 460 U.S. at 298.  Thus, where a plaintiff seeks "to recover for breach of duties *distinct* from duties forming the basis for a claim barred by section 2680(h) (misrepresentation), her claim [is] not barred."  *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1154 (D.C. Cir. 1985).  The "essence of an action for misrepresentation" is the "communication of misinformation on which the recipient relies."  *Block v. Neal*, 460 U.S. 289, 296-97 (1983).  Actionable misinformation is "confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.'"  *United States v. Neustadt*, 366 U.S. 696, 711 n.26 (1961) (quoting W. Prosser, *Torts* § 85 (1st ed. 1941)).

The Court lacks jurisdiction over Count II because it is essentially a claim for misrepresentation.  The complaint alleges that the DOJ misinformed OMB, potential customers and plaintiff by stating that TrustedAgent would be a part of CSAM, though it was planning to replace it with a proprietary program.  (Compl. ¶¶ 31, 42, 48.)  Plaintiff admits that this "bait and switch" was harmful to its business interests because plaintiff "reli[ed] upon" the "inclusion of" TrustedAgent in the DOJ's proposal.  (*Id.* ¶¶ 65-67.)  Plaintiff alleges that the DOJ communicated misinformation, that others relied upon this misinformation, and that plaintiff's "financial or commercial interests" were subsequently invaded "in the course of business dealings."  Thus, Count II is "based on the intentional communication of misinformation by the government and do[es] not allege a separate duty owed to [plaintiff] by the government," and may not be brought under the FTCA.  *Messerschmidt v. United States*, No. 03-CV-2421, 2005 WL 578174, at *4 (D.D.C. Mar. 10, 2005).

Plaintiff suggests that "misrepresentation" is not the actual basis for Count II because defendant is liable for dropping TrustedAgent from its software package and interfering with its

access to customers.  (Pl.'s Opp'n at 9.)  But, as is clear from plaintiff's complaint, dropping

TrustedAgent was only "unfair" because DOJ had made "repeated reference" to the program in

its proposal to OMB and in its presentations to clients.  (*See, e.g.*, Compl. ¶ 65.)  Plaintiff did not

suffer damages merely because the DOJ developed a new software product.  Rather, it was

damaged because the DOJ allegedly committed negligent misrepresentation, by masking its true

intentions and "refus[ing] to act in the manner in which it had represented it would act."  *See*

*Scanwell Labs., Inc. v. Thomas*, 521 F.2d 941, 947 (D.C. Cir. 1975).  Moreover, plaintiff cannot

bring suit against the DOJ for interfering with its relationship with its customers because the

FTCA bars claims of interference with an "economic relationship with third parties" or any other

interference with "prospective advantage."  *Art Metal-U.S.A.*, 753 F.2d at 1154-55.  Count II

must be dismissed.

## IV.  COUNT III: BREACH OF FIDUCIARY DUTY

Count III alleges that the DOJ breached a fiduciary duty that it owed plaintiff "based

upon their relationship."  (Compl. ¶ 69.)  The complaint does not specify the nature of the

relationship, although plaintiff argues that the two parties were engaged in a joint venture.  (Pl.'s

Opp'n at 6 & n.1.)  Plaintiff suggests the DOJ violated D.C. law, which imposes on "'joint

adventurers'" a duty of "'good faith, fair and open dealing and the utmost of candor and

disclosure'" that "exists only within the scope of the enterprise and with respect to the subject

matter of the joint venture."  *Sind v. Pollin*, 356 A.2d 653, 655 (D.C. 1976) (quoting *Libby v. L.J.*

*Corp.*, 247 F.2d 78, 81 (D.C. Cir. 1957)).  Defendant first argues that this is essentially a contract

claim, or in the alternative, it argues that even if it is a tort claim, it may not be brought under the

FTCA because it arises out of alleged "misrepresentation."

Plaintiff counters that breach of a fiduciary duty is a tort in the District of Columbia, and that therefore this case need not be brought under the Tucker Act.  (Pl.'s Opp'n at 6 (citing *Garcia v. United States*, 996 F. Supp. 39, 43 (D.D.C. 1998) (citing *Beckman v. Farmer*, 579 A.2d 618 (D.C. 1990)); *see also C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 276 (D.D.C. 2009) ("[t]he breach of fiduciary duty claim sounds in tort . . . .")).)  However, as plaintiff itself points out, an action may exist in both tort and in contract.  (Def.'s Reply at 8.) *See also Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963) ("Many breaches of contract can also be treated as torts.").  Even where a clever plaintiff frames a claim as a "tort," if the alleged liability "depends wholly" upon the government's promise and the action is "essentially" for breach of contract, the action must be brought under the Tucker Act.  *Id.* at 296. *See also Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002) ("It is well established that where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract . . . .").

Defendant argues that Count III is "grounded entirely in contract" and seeks more than $10,000, and that therefore this claim is governed by the Tucker Act.  (Def.'s Mot. at 7.)  Again, the Court must determine "the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)," *Megapulse, Inc.*, 672 F.2d at 968, and consider if "it is possible to conceive of this dispute as entirely contained within the terms of the contract." *See Ingersoll-Rand Co.*, 780 F.2d at 77-78.  Thus, in *Woodbury*, the court found that plaintiff's claim sounded in contract, even though he had alleged that the federal Housing and Home Finance Agency had breached a fiduciary duty to him by providing him with a loan for a development project without adopting a long-range plan for "amortizing the . . . project."  313 F.2d at 293-94.  The court found that the government had only breached its fiduciary duty by

violating a contractual provision, so plaintiff's claim could not be brought under the FTCA. *Id.* at 295. The "breach of fiduciary duty" plaintiff alleges also appears to be "based entirely upon breach by the government of a promise made" to offer, promote, and use TrustedAgent's product in its FISMA solution. *See Wood v. United States*, 961 F.2d 195, 198 (Fed. Cir. 1992) (quoting *Woodbury*, 313 F.2d at 295). The only way the DOJ could have breached its fiduciary duties was to violate the terms of the implied or express agreement it had with plaintiff. Thus, any decision on the merits of this claim would necessarily be based on whether a joint venture existed and what the "scope" and "subject matter" of the venture were. *See Sind*, 356 A.2d at 655. This Court would be forced to interpret discussions between plaintiff and the DOJ to determine whether the parties had reached an agreement and what the scope of that agreement was. Thus, this claim essentially sounds in contract.

Plaintiff responds that a tort claim may be brought under the FTCA even if "a suit could be maintained for a breach of contract based upon the same facts." (Pl.'s Opp'n at 7 (citing *Woodbury*, 313 F.2d at 296).) However, the Ninth Circuit cases that plaintiff cites, as well as *Megapulse, Inc.*, make clear that an FTCA claim will not survive if the rights at issue originate with and depend upon the contract. In *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 549 (9th Cir. 1984), plaintiff entered into a contract with the United States to provide timber. Plaintiff's timber was subsequently destroyed by a fire that it alleged the government had negligently set. *Id.* The Court found that the contract only established plaintiff's ownership of the timber and that therefore the action sounded in tort. *Id.* at 552. Similarly, in *Walsh v. United States*, 672 F.2d 746, 747 (9th Cir. 1982), plaintiffs alleged that they had sold an easement to the government that it had failed to maintain, causing damage to their land. The Court found that even if the contract arguably required the government to maintain the easement,

there was a "common law privilege and duty . . . to repair and maintain" the easement that "exists if the deed of conveyance is wholly silent on the subject." *Id.* at 749-50.  Thus, because the contract did not "add to, detract from or change in any way" the existing common law duty to repair and maintain, the action was "essentially one sounding in tort." *Id.* at 750.  Finally, in *Megapulse, Inc.*, the D.C. Circuit was "convinced" that plaintiff's claims were not "'disguised' contract claims" because they were based on rights that existed "prior to the parties' first contract." 672 F.2d at 969 (quoting Brief for Appellant at 30).  The distinction between these three cases and plaintiff's claim is clear.  Plaintiff does not allege that the DOJ violated a duty that pre-existed the contract.  Moreover, the "common law" fiduciary duty imposed in a joint venture "exists only within the scope of the enterprise and with respect to the subject matter of the joint venture." *Sind*, 356 A.2d at 655.  Thus, unlike the government's duty in *Walsh*, the DOJ's duty to plaintiff depends upon the agreement between the parties.  This claim sounds in contract and is therefore not viable under the FTCA.[7]

---

[7] Because none of plaintiff's claims may be brought under the FTCA, the Court need not consider defendant's argument that plaintiff failed to satisfy the FTCA waiver provisions by listing a sum certain in damages in its administrative complaint.  (Def.'s Mot. at 21-24.)

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction will be granted as to Counts II and III.  The Court will deny defendant's motion to dismiss plaintiff's claim under the Lanham Act.  An Order consistent with this Memorandum Opinion is also being issued this date.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Dated: January 20, 2010